IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JIMMY BRIDGES,

                                        Plaintiff,

      v.

BURTON COX, MARY MILLER, JOHN DOE
MEDICAL STAFF, JOHN DOE BUREAU
OF HEALTH SERVICES OFFICIAL,
PHYSICIAN HEIDORN, HEALTH
SERVICE MANAGER ZWIERS, HOLLY
GUNDERSON, TIMOTHY CORRELL,
BETH DITTMANN, PAUL SUMNICHT,
BELINDA SCHRUBBLE, CYNTHIA THORPE
and RICK RAEMISCH,

                                        Defendants.

ORDER

10-cv-534-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Petitioner Jimmy Bridges, a prisoner at the Waupun Correctional Institution, has filed a proposed complaint and a request for leave to proceed in forma pauperis. Plaintiff alleges that each of the defendants was deliberately indifferent to his serious medical needs by failing to properly treat his knee pain or arrange for surgery. He has struck out under 28 U.S.C. § 1915(g), which means that he cannot obtain indigent status under § 1915 in any suit he files during the period of his incarceration unless he alleges facts in his complaint

from which an inference may be drawn that he is in imminent danger of serious physical injury. After applying 28 U.S.C. § 1915(g) to plaintiff's claims, I conclude that several of his claims meet the imminent danger requirement while others do not. Therefore, I will give him a chance to choose whether (1) to proceed with his imminent danger claims, at which point those claims will be screened but his other claims will be dismissed without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims.

I draw the following facts from plaintiff's complaint.

ALLEGATIONS OF FACT

Plaintiff Jimmy Bridges is an inmate at the Waupun Correctional Institution. In 2005, while he was incarcerated at the Wisconsin Secure Program Facility, Dr. James Leonard of the University of Wisconsin Hospital diagnosed Osgood-Schlatter disease, pain "and chronic traction spurring pain with a long bony outgrowth" in his knee. Leonard recommended surgery to remove the outgrowth. Defendant Burton Cox, a physician at the Wisconsin Secure Program Facility, ordered the surgery through the Department of Corrections Bureau of Health Services on December 16, 2005. On December 19, the Bureau approved the surgery. An MRI of plaintiff's right knee on December 8, 2006 showed that plaintiff had developed chronic patella insertional tendinitis, causing him additional pain.

2

Defendants Cox and Mary Miller, the health services manager at the Wisconsin Secure Program Facility, were responsible for setting a date for the surgery, but they did not request a date until June 12, 2007. Ultimately, the surgery was scheduled for October 8, 2007, but plaintiff was released on parole in July 2007. Cox and Miller were aware of plaintiff's parole date. John Doe medical staff and higher ranking officials for the Bureau of Health Services canceled plaintiff's medical coverage once he was released on parole, so he did not receive the surgery.

At some point, plaintiff's parole was revoked and he was incarcerated at the Green Bay Correctional Institution. From September 2008 to February 2009, plaintiff complained of persistent, severe pain in his knee. Defendant Heidorn, a physician at the Green Bay prison, ordered x-rays in October 2008, which showed that plaintiff had grown new bone spurs. Despite these findings, Heidorn and defendant health services manager Zwiers did nothing to reduce plaintiff's pain and refused to request a date for surgery.

In March 2009, plaintiff was released on parole, but his parole was revoked and he was incarcerated at the Dodge Correctional Institution in November 2009. Plaintiff alerted medical staff to his knee ailments and requested surgery. He was placed on moderate activity status; he was not given any pain medication; and his request for surgery was ignored. While at the Dodge prison, plaintiff fell and injured his right foot. The fall also caused him severe pain in his right knee. Defendant Timothy Correll, a doctor at the prison,

3

ordered x-rays for plaintiff's foot but not for his knee and did not give him any pain medication for the pain in his knee. The health services manager at the prison, Beth Dittmann, supported Correll's decision, stating that plaintiff "was placed on moderate activity status. He was issued crutches. Although he has a chronic right knee issue, it does not require specialty intervention."

On February 22, 2010, plaintiff was transferred to the Waupun Correctional Institution. Nurse practitioner Gorske refused to give plaintiff any pain medication, instead directing him to purchase medication from the canteen, even though Gorske knew that plaintiff had no funds. Plaintiff was seen by defendant Paul Sumnicht, a doctor at the Waupun prison, after repeated sick call requests. Plaintiff told Sumnicht that without surgery, he would remain in intense pain and his ailments would only get worse. In response, Sumnicht prescribed "APAP" (a pain reliever) even though Sumnicht knew that would be ineffective. Also he prescribed ice, which was ineffective, and Votran gel, which caused plaintiff's knee to swell and his pain to increase.

In early June 2010, the Votran gel was discontinued and the APAP pain reliever was found to be ineffective. Plaintiff was then prescribed analgesic balm, but it caused his knee to throb with pain and was then discontinued. Sumnicht prescribed iontophoresis and physical therapy even though he was aware that these treatments had been tried previously with no improvement. In July 2010, plaintiff completed physical therapy but it was

4

ineffective. At some point, Sumnicht denied plaintiff's request for surgery, stating that there was a budget concern and that plaintiff would have to get the surgery after being released from prison in November 2010.

Defendant health services manager Belinda Schrubble was aware of these facts yet refused to correct Sumnicht's treatment decisions.

Defendants Regional Nursing Coordinator Cynthia Thorpe and Bureau of Health Services employee Holly Gunderson were responsible for investigating plaintiff's inmate grievances and medical records to determine whether the treatment decisions were correct. However, after being made aware of plaintiff's problems, they did not correct Sumnicht's treatment decisions.

Defendant Rick Raemisch, Secretary of the Department of Corrections, is the final arbiter of inmate grievance appeals, and he affirmed the denial of plaintiff's grievances.

DISCUSSION

28 U.S.C. § 1915(g) reads as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

5

On at least three prior occasions, this court has denied plaintiff leave to proceed in forma pauperis in lawsuits that were legally frivolous, malicious or failed to state a claim upon which relief may be granted. Bridges v. Litscher, 02-C-300-C, decided June 14, 2002; Bridges v. Porath, 95-C-736-S, decided October 19, 1995; and Bridges v. Fish, 95-C-173-S, decided March 20, 1995. Therefore, plaintiff cannot proceed in this case unless I find that he has alleged that he is in imminent danger of serious physical injury.

To meet the imminent danger requirement of § 1915(g), a prisoner must allege a physical injury that is imminent or occurring at the time the complaint is filed and must show that the threat or prison condition causing the physical injury is real and proximate. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) (citing Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003); Lewis v. Sullivan, 279 F.3d 526, 529 (7th Cir. 2002)). Ordinarily, claims of physical injury arise in the context of lawsuits alleging Eighth Amendment violations. In his complaint, plaintiff is alleging that he suffers from knee ailments causing him constant pain. His pain has not been properly treated by staff at four different prisons, and an approved surgery has been delayed for years.

In considering whether plaintiff's complaint meets the imminent danger requirement of § 1915(g), a court must follow the well established proposition that pro se complaints must be liberally construed. Ciarpaglini, 352 F.3d at 330. Further, it is improper to adopt a "complicated set of rules [to discern] what conditions are serious enough" to constitute

6

"serious physical injury" under § 1915(g). Id. at 331. Given this framework, I conclude that plaintiff's allegations concerning his knee ailments qualify under the imminent danger standard to the extent that plaintiff raises claims against defendants *currently* responsible for his medical treatment. This includes the defendants at the Waupun Correctional Institution as well as the higher ranking officials in the Department of Corrections.

However, plaintiff's claims against staff members at prisons where he is no longer incarcerated do not meet the imminent danger standard, because those defendants are not responsible for his medical care at the present time. Because these allegations do not involve imminent danger, plaintiff cannot proceed on these claims without prepaying the $350 filing fee for this case.

It is this court's usual practice to move forward on imminent danger claims as quickly as possible by screening the complaint even before an initial partial payment has been made and, if the complaint survives screening, setting expedited briefing on preliminary injunctive relief. E.g., Norwood v. Strahota, 08-cv-446 (W.D. Wis. Aug. 11, 2008). On the other hand, in cases in which a plaintiff with three strikes brings no claims that allege imminent danger, ordinarily this court gives the plaintiff a short deadline within which he is to pay the full $350 filing fee or have the case closed. This case is unusual in that plaintiff brings several claims that qualify for the imminent danger exception and others that do not. It is impractical to proceed quickly on the imminent danger claim while waiting for payment of

7

the filing fee in order to screen his other claims under 28 U.S.C. § 1915A. Therefore, I will give plaintiff a choice: he can (1) proceed with his imminent danger claims, at which point I will screen those claims but dismiss his other claims without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims. He will have until November 17, 2010, to make the choice. Should he fail to respond by the deadline, I will assume that he wishes to proceed on his imminent danger claims and I will dismiss his other claims.

Should plaintiff choose to proceed only on his imminent danger claims, he will have to prepay only an initial partial payment of the $350 filing fee. From the trust fund account statement plaintiff submitted along with his complaint and request for leave to proceed in forma pauperis, I have calculated plaintiff's initial partial payment to be $1.66. He is to submit a check or money order made payable to the clerk of court in the amount of $1.66 as soon as possible. If plaintiff does not have the money to make the initial partial payment in his regular account, he will have to arrange with prison authorities to pay some or all of the assessment from his release account. This does not mean that plaintiff is free to ask prison authorities to pay *all* of his filing fee from his release account. The only amount plaintiff must pay at this time is the $1.66 initial partial payment. Before prison officials take any portion of that amount from plaintiff's release account, they may first take from plaintiff's regular account whatever amount up to the full amount plaintiff owes.

ORDER

IT IS ORDERED that plaintiff Jimmy Bridges may have until November 17, 2010, to advise the court whether he wishes to (1) proceed with his imminent danger claims, at which point I will screen those claims but dismiss his other claims without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims. Should plaintiff fail to respond to this order by November 17, 2010, I will assume that he wishes to proceed on his imminent danger claims and I will dismiss his other claims. If he decides to pay the $350 filing fee, he may have until November 24, 2010, to submit a check or money order made payable to the clerk of court in the amount of $350.

Entered this 3d day of November, 2010.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge